UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**LAURA KENDRICK,**

    **Plaintiff,**

v.                                                        CASE NO.:  8:09-CV-522-T-17EAJ

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI").[1]

The undersigned, after reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed, the administrative record, and the pleadings and memoranda submitted by the parties in this case, as well as the relevant statutory and case law, affirms the decision of the ALJ denying Plaintiff's claim.

In an action for judicial review, the reviewing court must affirm the Commissioner's decision if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g) (2006). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703

---

[1] The District Judge has referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D. Fla.

F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, the Court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir.1979) (citations omitted).[2]

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir.1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir.1987).

**Background**

Plaintiff filed her applications for DIB and SSI on January 19, 2005, alleging a disability onset date of September 1, 1996.[3] (T 10, 69-71) The Commissioner denied Plaintiff's claim initially and upon reconsideration. (T 10) Following an administrative hearing, the ALJ denied Plaintiff's claim in a decision dated June 27, 2008. (T 10-20) The Appeals Council declined to review the ALJ's decision, making it the final decision of the Commissioner. (T 2-4)

At the time of the ALJ's decision, Plaintiff was 33 years old with at least a high school education. (652, 654) Plaintiff had past relevant work as a cosmetologist and a cashier. (T 654, 656) During the applicable time period, the ALJ found that Plaintiff suffered from the severe impairments

---

[2] Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

[3] At the hearing, Plaintiff amended her alleged onset date to December 31, 2001, which is also her date of last insured ("DLI"). (T 10) For DIB purposes, Plaintiff must establish disability on or before her DLI.

of bipolar disorder, depression, low back pain, arthritis, and "fibromyalgia by history." (T 13) The ALJ determined that these impairments, individually or in combination, did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 15) The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to

> perform sedentary work except the claimant can lift and carry ten pounds occasionally and less than ten pounds frequently. The claimant can sit and stand for six hours out of an eight-hour day but must be able to change positions every 30 minutes. She can occasionally use the left upper extremity for reaching, pushing and pulling. The claimant can occasionally perform postural functions but must avoid concentrated exposure to extreme fumes, gases, chemicals and irritants. Secondary to her mental limitations, the claimant can remember locations and work-like procedures; understand, remember and carry out short simple 1-2 step instructions; perform simple repetitive tasks and deal with standardized situations.

(Id.) The ALJ found Plaintiff unable to perform her past relevant work but capable of performing work as a medical supply clerk, telephone clerk, and order clerk. (T 18-19) Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Act and denied Plaintiff's claim for DIB and SSI. (T 20)

The ALJ's decision adequately summarizes the medical evidence, which will not be repeated here except as necessary to address the issues presented.

**Discussion**

Plaintiff alleges the Commissioner erred in: (1) evaluating the severity of Plaintiff's fibromyalgia; and (2) relying on Plaintiff's ability to perform certain daily activities in discounting her credibility (Dkt. 15 at 3).

**A.** Plaintiff argues that the ALJ failed to comply with Social Security Ruling 99-2p and improperly relied on the lack of physical findings in assessing the severity of Plaintiff's fibromyalgia. The ALJ found Plaintiff's fibromyalgia to be severe but not disabling. (T 17)

3

Plaintiff's argument that remand is required because the ALJ disregarded Social Security Ruling 99-2p is without merit. Social Security Rulings are not binding on the reviewing court. See Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (per curiam) (unpublished). In any event, the ALJ complied with the ruling when she acknowledged Plaintiff's fibromyalgia as a severe impairment but held that Plaintiff was capable of sedentary work under limitations designed to accommodate her impairments.[4] (T 13, 15)

Plaintiff next contends that the ALJ improperly emphasized the lack of physical findings in assessing the severity of Plaintiff's fibromyalgia. Plaintiff focuses on the ALJ's discussion of a February 7, 2000 treatment note by physician's assistant James Jelen, P.A. ("Mr. Jelen"), who saw Plaintiff on one occasion and diagnosed her with lower back pain and fibromyalgia with 18/18 trigger points. (T 14-17, 601-02)

The Eleventh Circuit recognizes that fibromyalgia has no known causes, no cure, and that its symptoms are entirely subjective. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). Due to "the unavailability of objective clinical tests, it is difficult to determine the severity of the condition and its impact on one's ability to work." Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1335 (M.D. Fla. 2003). An individual's described symptoms, accompanied by tender points on his or her body, generally drive a diagnosis of fibromyalgia. Mackie, 2008 WL 719210, at *9.

As a physician's assistant, Mr. Jelen is not an "acceptable medical source[]," and his opinion may not be relied on as evidence establishing an impairment. 20 C.F.R. § 404.1513(a). Nonetheless, his opinion may be relied on in determining the severity of a claimant's impairments

---

[4] According to Social Security Ruling 99-2p, the Commissioner recognizes fibromyalgia and chronic fatigue syndrome as medically determinable impairments "when accompanied by appropriate medical signs or laboratory findings." SSR 99-2p.

and their effect on the claimant's ability to work. Id. at § 404.1513(d)(1).

Mr. Jelen examined Plaintiff on one occasion in February 2000 and diagnosed fibromyalgia. (T 601-02) He also indicated that Plaintiff had no spine, chest, or hip tenderness and directed Plaintiff to take Motrin for her pain. (Id.)

Contrary to Plaintiff's contention, the ALJ relied in part on Mr. Jelen's opinion in determining that Plaintiff's fibromyalgia was severe. (T 17) The ALJ reasoned, however, that Mr. Jelen's finding that Plaintiff had 18/18 trigger points was inconsistent with the physician assistant's own statements that Plaintiff had no spine, chest, or hip tenderness. (Id.)[5]

The ALJ emphasized an eleven-month gap in Plaintiff's treatment history from February 2000 until January 30, 2001. (T 14) On that date, nurse practitioner Maureen Kapatkin, A.R.N.P. ("Ms. Kapatkin") of Brandon Outreach Clinic noted that Plaintiff was diagnosed with fibromyalgia "not treated except for 800 mg of Motrin [twice a day] for pain with some relief." (T 544) Ms. Kapatkin indicated that Plaintiff had a full range of motion in her neck, knees, shoulders, elbows, and wrists. Plaintiff complained of back pain and fatigue. (T 546)

Plaintiff's fibromyalgia was noted again on February 27, 2001, when Plaintiff complained of the side effects caused by Celebrex (a fibromyalgia medication prescribed by Ms. Kapatkin) and requested a medication change. (T 549) Plaintiff mentioned continuing fatigue in March and April 2001. (T 550, 552) Monthly treatment notes from May through September 2001 list fibromyalgia

---

[5] Fibromyalgia is characterized as pain in at least 11 of 18 specified tender points clustered around the neck, shoulder, chest, hip, knee, and elbow regions. See Mackie v. Astrue, No. 1:07-CV-98-MP-WCS, 2008 WL 719210, at * 9 (N.D. Fla. Mar. 11, 2008). The 18 trigger points associated with fibromyalgia are located across the neck, shoulders, chest, upper back, knees, hips, elbows, and buttocks. See American College of Rheumatology Fibromyalgia Diagnostic Criteria, http://www.nfra.net/Diagnost.htm (last visited February 17, 2010).

as one of Plaintiff's medical problems but do not suggest that Plaintiff's pain was increasing. (T 553-59) Ms. Kapatkin noted generalized tenderness in Plaintiff's abdomen in November 2001. (T 561) Plaintiff was put on medication to control her pain, including Soma, Celebrex, and Lexapro. (T 549, 552, 554)

In December 2001, D. Wedemeyer, M.D. ("Dr. Wedemeyer") of Brandon Outreach Clinic completed an evaluation sheet on which he noted Plaintiff's history of fibromyalgia but otherwise focused on her allergy symptoms.[6] (T 562-63) Dr. Wedemeyer observed "very mild tenderness" in Plaintiff's back in February 2002. (T 571) The remainder of the records from Brandon Outreach Clinic consistently mention fibromyalgia and Plaintiff's complaints of fatigue but do not discuss trigger points or functional limitations due to Plaintiff's fibromyalgia. (T 544-66)

Plaintiff's treating physician at Brandon Pain Clinic from October 2004 until January 2008, George Sidhom, M.D. ("Dr. Sidhom"), noted Plaintiff's complaints of chronic neck and back pain and prescribed methadone and Percocet but did not diagnose Plaintiff with fibromyalgia. (T 234-37, 297-312)[7] In June 2005, when Plaintiff complained of "increased lower back pain which radiates

---

[6] It appears that Plaintiff was treated by Dr. Wedemeyer, medical students under the supervision of Dr. Wedemeyer, and Ms. Kapatkin at Brandon Outreach Clinic. (See T 558) The testimony of a treating physician must be given substantial or consideration weight unless good cause is shown to the contrary. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). "[A] treating physician's testimony can be particularly valuable in fibromyalgia cases, where objective evidence is often absent." Moore, 405 F.3d at 1212. The ALJ did not reject the opinions of Dr. Wedemeyer or any of the other records from Brandon Outreach Clinic; in fact, the ALJ relied on them in finding Plaintiff's fibromyalgia to be severe. (T 14-18) Plaintiff does not argue to the contrary.

[7] Plaintiff submitted some of her 2007 and 2008 treatment records from Dr. Sidhom to the Appeals Council after the ALJ's decision. (T 605-28) After considering these records, the Appeals Council affirmed the ALJ's decision. (T 5) The court looks only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence. Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).

into the right lower extremities," Dr. Sidhom diagnosed Plaintiff with a herniated disc and increased her dosages of methadone and Ultram. (T 299-300) Dr. Sidhom filled out two disabled parking applications for Plaintiff in January and July of 2005, indicating that Plaintiff was temporarily, rather than permanently, disabled. (T 256-57) He indicated that Plaintiff's "pain [was] overall stable on meds" as late as October 31, 2007.[8] (T 231)

Nevertheless, the ALJ listed fibromyalgia as one of Plaintiff's severe impairments. By definition, Plaintiff's fibromyalgia significantly limits her physical or mental ability to do basic work activities. See Morrison, 278 F. Supp. 2d at 1336 (citation omitted). The ALJ accounted for these limitations by restricting Plaintiff to sedentary work[9] that requires the occasional lifting of ten pounds and permits Plaintiff to change positions every thirty minutes. (T 15)

Contrary to Plaintiff's argument, the ALJ's decision did not turn on the lack of objective medical findings regarding the severity of Plaintiff's fibromyalgia. Cf. Somogy v. Comm'r of Soc. Sec., No. 09-12067, 2010 WL 529297 (11th Cir. Feb. 16, 2010) (per curiam) (remanding case because ALJ emphasized lack of objective medical findings despite that multiple treating physicians opined that plaintiff's pain was severe enough to interfere with her attention and concentration). In finding Plaintiff's fibromyalgia to be severe but not disabling, the ALJ considered Plaintiff's

---

[8] Although the ALJ did not cite Dr. Sidhom's records specifically, she "considered the opinions of the examining and treating physicians and finds their assessment on the claimant's physical and mental conditions to be generally consistent with the overall objective medical evidence of record." (T 18)

[9] Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

treatment at Brandon Outreach Clinic and Plaintiff's daily activities. (T 17-18) In addition, the ALJ discussed the inconsistency of Mr. Jelen's statement that examination revealed 18 trigger points yet Plaintiff was found to have no tenderness with spinal palpitation or percussion, no chest tenderness, and no tenderness of the hips with compression. (T 17) The ALJ also noted that Plaintiff had used only Motrin to treat her condition and did not seek medical treatment for eleven months following the diagnosis of fibromyalgia [10]. (Id.) No treating or examining physician ever diagnosed Plaintiff with functional limitations related to her fibromyalgia. Thus, substantial evidence supports the ALJ's decision.[11]

**B.** Plaintiff claims the ALJ improperly relied on her daily activities to discount Plaintiff's credibility. Plaintiff does not contest the ALJ's characterization of her daily activities and instead argues that her ability to perform the simple daily activities of washing clothes, driving a car, cooking, counting change, and shopping for groceries does not undermine her testimony that she is disabled (Dkt. 15 at 3).

The Eleventh Circuit has established a three-part pain standard to use when evaluating a claimant's subjective complaints of pain. A plaintiff must show: (1) evidence of an underlying medical condition, and either (2) the medical evidence substantiates the severity of the pain from the condition, or (3) the condition is of sufficient severity that it would be reasonably expected to

---

[10] At one point, the ALJ erroneously referred to Mr. Jelen as a "non-board certified doctor" (T 17), but it is clear that the ALJ knew him to be a physician's assistant. (T 17-18) In any event, even if a physician reviewed Mr. Jelen's findings, the ALJ properly weighed the evidence and resolved conflicts in a manner which this court must affirm because there is substantial evidence supporting the Commissioner's findings.

[11] Plaintiff also suggests that the ALJ did not properly apply the pain standard in assessing her subjective complaints. This issue implicates Plaintiff's second argument.

8

produce the pain alleged.  Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).

Where an ALJ declines to credit a claimant's testimony as to pain, the ALJ must articulate explicit and adequate reasons for doing so.  Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (per curiam).  A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court.  Id.  A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  Id. (citation omitted).

The ability to engage in everyday activities of short duration such as housework or fishing does not disqualify a claimant from receiving disability benefits.  Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997).  However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished).  In fact, when evaluating a claim based on subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating sources, and evidence of how the pain affects the claimant's daily activities and ability to work.  20 C.F.R. § 416.929(a).

On June 16, 1999, Plaintiff underwent a physical therapy evaluation at University Hospital. (T 264)  Plaintiff complained of back and knee pain. (Id.) Plaintiff's physical therapist noted that Plaintiff was independent in all of her daily activities, cared for her infant son, and assisted in caring for her disabled grandmother. (Id.; T 13)

On July 15, 2005, Plaintiff filled out a Function Report - Adult.  In the section of the form asking Plaintiff to describe her daily activities, she wrote:

> Not every day is the same.  Some days get up have coffee sit in recliner watch TV, take medicine, and wake kids up.  When they have school drive my son to school.

> Then come back and lay down. Put clothes in washer. Pick son up from bus stop on occasion. Make sure my son does homework gets snack and sandwich have him get everything ready to go to football practice. Come home take shower eat and go to bed. Some days have doctor's appointments. Cut vegetables or prepare food throughout day so my husband can cook when he gets home.

(T 133-34) On July 18, 2005, Plaintiff's mother filled out a Function Report - Adult - Third Party and stated that Plaintiff "[t]akes son to school, plans meals, doctor visits, small amount of shopping, assisted. Has problems with positions and bending." (T 142)

At her hearing in 2008, Plaintiff testified that she has good days and bad days but that she is able to bathe and dress herself, care for her toddler with assistance from her mother, occasionally shop and use a computer, attend her stepson's football games once a week, and manage her finances with her mother's help. (T 660-62) She testified that she can stand for only a couple of minutes at a time and that she cannot bend or kneel. (T 663-64) According to Plaintiff, on her good days she can lift her 23-pound toddler and on her bad days she lies in a recliner much of the day. (T 661, 664-66) Plaintiff's mother testified that she cares for Plaintiff's son as much as possible, takes Plaintiff's stepson to school, takes Plaintiff to her medical appointments, and does chores around Plaintiff's house. (T 669-70) Plaintiff's husband also testified that Plaintiff has a hard time standing and sitting and cares for their son by "get[ting] help from everywhere she can, when she can." (T 676)

The ALJ considered these statements regarding Plaintiff's daily activities and determined that Plaintiff can count change, use a checkbook, drive her son to school, shop, help prepare dinner, wash clothes, read books, and follow simple instructions. (T 17) According to the ALJ, "to the extent that the claimant contends that she would be rendered by her subjective complaints completely incapable of performing even some unskilled-sedentary work, the undersigned finds these contention[s] to be less than entirely credible when compared to the record as a whole." (Id.)

Contrary to Plaintiff's suggestion, the ALJ did not rely solely on Plaintiff's daily activities in discounting her credibility. The ALJ also mentioned Mr. Jelen's February 2000 finding that Plaintiff suffered from fibromyalgia but had no spine, chest, or hip tenderness and required only Motrin for her pain. (T 17) The ALJ considered the gap in Plaintiff's medical treatment as inconsistent with disabling pain. (T 16) Regarding Plaintiff's complaints of disabling lower back pain, a February 2000 X-ray revealed "[m]ild disc space narrowing at the level of L5/S1 ... There appears to be a pars defect at the level of L4/L5." (T 603) The ALJ noted these findings and treatment records from Brandon Outreach Clinic from January 2001 through April 2002 indicating generalized tenderness. (T 17, 552-67) The ALJ observed, however, that in December 2001 and August 2002, Dr. Wedemeyer found only mild tenderness in Plaintiff's back. (T 17-18, 562-63, 571) Also of significance to the ALJ was that none of Plaintiff's treating sources opined that Plaintiff is totally disabled. (T 16) Further, no treating or examining physician ever diagnosed Plaintiff with any functional limitations relating to her fibromyalgia.

Finally, the ALJ limited Plaintiff to sedentary work that permits her to change positions every thirty minutes and only occasionally lift up to ten pounds. (T 15) This finding is consistent with Plaintiff's and her family's testimony regarding her daily activities.

Because the ALJ did not rely solely on Plaintiff's daily activities and instead provided a detailed factual basis for his credibility findings, substantial evidence supports the ALJ's credibility finding. See Brook v. Astrue, No. 3:08-CV-265-J-MCR, 2009 WL 2731343, at *16-17 (M.D. Fla. Aug. 26, 2009) (affirming ALJ's credibility finding based on a consideration of plaintiff's daily activities, among other factors); Dusterhoft v. Astrue, No. 5:07-CV-466-Oc-10GRJ, 2009 WL

800141, at * 7, n.25 (M.D. Fla. Mar. 25, 2009) (ALJ properly listed daily activities among reasons for discrediting a plaintiff's testimony regarding inability to perform sedentary work).

**Conclusion**

The decision of the Commissioner denying Plaintiff's applications for DIB and SSI should be affirmed. Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) the decision of the Commissioner be **AFFIRMED** and this case dismissed, with each party to bear its own costs and expenses; and

(2) the Clerk of the Court shall enter final judgment in favor of Defendant consistent with 42 U.S.C. 405(g).

Dated: February 18th, 2010

_____
ELIZABETH A JENKINS
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attaching the factual findings on appeal. See 28 U.S.C. 636(b)(1).